**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **VICTORIA GRIVETTI, JULIE BELL,** and **EQUILA JACKSON,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**DENTAL INTELLIGENCE, INC.,**<br><br>Defendant. | Civil Action No. 1:25-cv-02464<br><br>Judge: Hon. Lindsay C. Jenkins<br>Magistrate: Hon. Beth W. Jantz |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS


I. INTRODUCTION AND RELEVANT BACKGROUND ........ 1

II. THE SETTLEMENT AGREEMENT ........ 2

A. SETTLEMENT CLASS ........ 2

B. SETTLEMENT CONSIDERATION ........ 3

1. Settlement Fund ........ 3

2. Settlement Benefits ........ 3

3. Remedial Measures ........ 4

C. SETTLEMENT ADMINISTRATION ........ 4

1. Settlement Administrator ........ 4

2. Notice Program ........ 4

3. Opt-Outs and Objections ........ 6

D. ATTORNEYS' FEES AND SERVICE AWARDS ........ 7

III. LEGAL STANDARD ........ 7

IV. ARGUMENT ........ 9

A. CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE 9

1. The Settlement Class Satisfies the Requirements of Rule 23(a) ........ 9

2. Settlement Class Counsel and the Settlement Class Representatives have and will continue to fairly and adequately protect the interests of the Settlement Class ........ 12

3. The Settlement Class meets the requirements of Rule 23(b). ........ 14

B. THE SETTLEMENT MEETS THE REQUIREMENTS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)(2). ........ 16

1. The Class Representatives & Settlement Class Counsel have adequately represented the Settlement Class. ........ 17

2. The Settlement resulted from extensive arms-length negotiations and is not the product of collusion. ........ 18

3. The Settlement provides significant benefits to the Settlement Class, particularly in light of the uncertainty of prevailing in the litigation. ........ 19

4. The Settlement treats Settlement Class Members equally. ........ 25

C. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM. ........ 25

D. THE COURT SHOULD APPOINT THE SETTLEMENT ADMINISTRATOR. ............ 27
E. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING. .................... 27
V. PROPOSED SCHEDULE ........................................................................................ 28
VI. CONCLUSION ........................................................................................................ 28

# TABLE OF AUTHORITIES

*Am. Int'l Grp., Inc. v. Ace Ina Holdings, Inc.*, 2012 U.S. Dist. LEXIS 25265 (N.D. Ill. Feb. 28, 2012) ........ 15

*Amadeck v. Capital One Fin. Corp.* (*In re Capital One Tel. Cons. Prot. Act Litig.*), 80 F. Supp. 3d 781 (N.D. Ill. 2015) ........ 20

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ........ 16

*Armstrong v. Bd. of Sch. Dirs. Of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) ........ 8

*Braun v. Phila. Inquirer, LLC*, 2025 U.S. Dist. LEXIS 85786 (E.D. Pa. May 6, 2025) ........ 21

*Chambers v. Together Credit Union*, 2021 WL 1948452 (S.D. Ill. May 14, 2021) ........ 24

*Chandler v. S.W. Jeep–Eagle, Inc.*, 162 F.R.D. 302 (N.D. Ill. 1995) ........ 9

*Chandler v. Sw. Jeep-Eagle*, 162 F.R.D. 302 (N.D. Ill. 1995) ........ 14

*De La Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225 (7th Cir. 1983) ........ 11

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ........ 8

*Furman v. At Home Stores LLC*, 2017 U.S. Dist. LEXIS 73816 (N.D. Ill. May 1, 2017) ........ 24

*Gammon v. GC Servs. Ltd. P'ship.*, 162 F.R.D. 313 (N.D. Ill. 1995) ........ 12

*Gaspar v. Linvatec Corp.*, 167 F.R.D. 51 (N.D. Ill. 1996) ........ 10

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ........ 8

*Gillespie v. Equifax Info. Servs., LLC*, 2009 U.S. Dist. LEXIS 131242 (N.D. Ill. Dec. 18, 2009) ........ 18

*Goldsmith v. Tech. Sols. Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) ........ 8

*Golon v. Ohio Sav. Bank*, 1999 U.S. Dist. LEXIS 16452 (N.D. Ill. Oct. 14, 1999) ........ 14

*Hammon v. The Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ........ 21

*Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 C 5891, 2023 U.S. Dist. LEXIS 200619 (N.D. Ill. Nov. 8, 2023) ........ 21

*Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974) ........ 16

*Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) ........ 9, 15

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ........ 14

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) ........ 17

*In re Novant Health, Inc.*, 2024 U.S. Dist. LEXIS 107949 (M.D.N.C. June 17, 2024) ........ 20

*In re TD Ameritrade Acct. Holder Litig.*, 2011 U.S. Dist. LEXIS 103222 (N.D. Cal. Sept. 13, 2011) ........ 21

*In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904 (N.D. Ill. 2022) ........ 20

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ........ 8

*Katz-Lacabe v. Oracle Am., Inc.*, 2024 U.S. Dist. LEXIS 208150 (N.D. Cal. Nov. 15, 2024) ........ 20

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ........ 10

*Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. March 3, 2023) ........ 21

*Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185 (N.D. Ill. 2018) .......... 21
*Mace v. Van Ru Cred. Corp.*, 109 F.3d 338 (7th Cir. 1997) .......... 15
*Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*, 834 F. 2d 677 (7th Cir. 1987) .......... 18
*Maxwell v. Arrow Fin. Servs., LLC*, 2004 U.S. Dist. LEXIS 5462 (N.D. Ill. Mar. 31, 2004) .......... 15
*McCabe v. Crawford & Co.,* 210 F.R.D. 631 (N.D. Ill. 2002) .......... 9
*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) .......... 26
*Muro v. Target Corp.*, 580 F.3d 485 (7th Cir. 2009) .......... 12
*Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020) .......... 12
*Pesek v. Donahue*, 2006 U.S. Dist. LEXIS 26209 (N.D. Ill. Feb. 9, 2006) .......... 22
*Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513 (N.D. Ill. 2008) .......... 10
*Roberts v. Graphic Packaging Int'l, LLC*, 2024 U.S. Dist. LEXIS 122323 (S.D. Ill. July 11, 2024) .......... 24
*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) .......... 10, 11
*Sledge v. Sands*, 182 F.R.D. 255 (N.D. Ill. 1998) .......... 12
*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)) .......... 17
*T.K. v. Bytedance Tech. Co., Ltd.*, 2022 U.S. Dist. LEXIS 65322 (N.D. Ill. Mar. 25, 2022) .......... 17
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .......... 10, 12
*Woestman v. Signode Indus. Grp., LLC*, 594 F. Supp. 3d 993 (N.D. Ill. 2022) .......... 9

Plaintiffs Victoria Grivetti, Julie Bell, and Equila Jackson ("Plaintiffs"), individually and on behalf of the Settlement Class,[1] hereby respectfully submit this unopposed Motion for Preliminary Approval of Settlement and Memorandum of Law in Support and request the Honorable Court preliminarily approve the Settlement, certify the Settlement Class, appoint Plaintiffs as Class Representatives, appoint Tyler J. Bean and Sonjay Singh of Siri & Glimstad LLP ("Settlement Class Counsel") as counsel to the Settlement Class, approve the proposed Notice Program and Claims process, and order Notice to the Settlement Class. Defendant Dental Intelligence, Inc. ("Dental Intelligence") does not oppose the relief requested in this motion.

## I. INTRODUCTION AND RELEVANT BACKGROUND

Dental Intelligence is a software company that provides practice management software to dental offices across the United States. *See* ECF No. 90 (hereinafter, the "Complaint") ¶ 10. As part of its software suite, Dental Intelligence offered an appointment scheduling software (the "LocalMed Portal" or "Portal") that its clients installed directly onto their practice websites, allowing dental patients to schedule, modify, and cancel appointments online. *Id.* ¶¶ 11-12.

Each of the Plaintiffs are Illinois residents who utilized the LocalMed Portal in 2023 to schedule appointments at their dental clinics for dental care. *Id.* ¶¶ 18, 24, 30. Plaintiffs allege that they submitted dental appointment information, including their names, contact information, the location of their appointments, the names of their treating providers, their insurance providers, and/or the reasons for their appointments (collectively, the "Personal Dental Information") when scheduling appointments using the LocalMed Portal. *Id.* ¶¶ 19, 25, 31. Plaintiffs further allege that Google tracking and analytics software (the "Tracking Tools") was installed on the Portal and transmitted the Personal Dental Information input by Plaintiffs into the LocalMed Portal while scheduling or rescheduling their appointments. *Id.* ¶¶ 3, 69.

---

[1] Unless otherwise stated, all capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement ("S.A." or "Agreement"), which is attached as **Composite Exhibit No. 1** to the Declaration of Sonjay Singh in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Singh Prelim. App. Decl."), filed herewith.

Plaintiffs subsequently filed this Action in the United States District Court for the Northern District of Illinois on March 7, 2025, against Dental Intelligence and two of its client-dental offices. *See* ECF No. 1. On July 15, 2025, Plaintiffs filed their First Amended Complaint. ECF No. 53. Thereafter, Dental Intelligence filed a motion to dismiss the First Amended Complaint on August 29, 2025. ECF No. 59. Plaintiffs opposed the motion to dismiss, following which the Court entered an order granting in-part and denying in-part Dental Intelligence's motion to dismiss on March 6, 2026. ECF No. 85. On March 27, 2026, Plaintiffs filed the operative Second Amended Complaint.

In light of the risks, uncertainties, burden, and expense of continued litigation, Plaintiffs and Dental Intelligence (together, the "Parties") agreed to engage in informal discovery and good-faith, arm's-length settlement negotiations, including a full-day mediation session with an experienced data privacy mediator, Marc E. Isserles, Esq., of JAMS, on July 7, 2026, in an attempt to settle the Action. These efforts resulted in the Parties agreeing to the terms now consummated in the Agreement.

The Agreement provides significant monetary relief to Settlement Class Members. Dental Intelligence will pay five million seven hundred and fifty thousand dollars and zero cents ($5,750,000) as the total Settlement Fund. S.A. ¶ 14. All Settlement Class Members who submit a valid, complete, and timely Claim Form will receive a *pro rata* monetary payment from the Settlement Fund after deduction of all Notice and Settlement Administration Costs, and any Service Awards and Attorneys' Fees and Expenses Award approved by the Court.[2] *Id.* ¶ 17.

As detailed, *infra*, the Settlement is fair, reasonable, and adequate, and falls well within the range of final judicial approval.

## II. THE SETTLEMENT AGREEMENT

### A. SETTLEMENT CLASS

The Parties contemplate certification of a nationwide class defined as follows:

[2] The proposed Claim Form is attached as **Exhibit A** to the Agreement.

> All natural persons in the United States who used the LocalMed Portal to schedule, modify, or re-schedule an appointment between March 2022 and June 2025 and whose Personal Dental Information was allegedly disclosed or transmitted to a third party as set forth in the Complaint.

The Settlement Class includes all individuals who may have used configurations of the LocalMed Portal that allegedly contained the Tracking Tools asserted in the Complaint. The Settlement Class further excludes: (i) the Released Parties; and (ii) the Court, Court personnel, and members of their immediate families. Dental Intelligence has provided Plaintiffs' Counsel with documentation showing that there are a maximum of 1,079,483 Settlement Class Members.

For settlement purposes, the Parties agree that the Court should certify the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure. *Id.* ¶ 11.

## B. SETTLEMENT CONSIDERATION

### 1. Settlement Fund

Dental Intelligence shall pay a non-reversionary sum of five million seven hundred and fifty thousand dollars and zero cents ($5,750,000) to be used, along with any interest accrued thereon after payment by Dental Intelligence, for distribution as the only source of payment for all costs of the Settlement, including all Settlement Administration and Notice Costs, the Settlement Class Representatives' Service Awards, Settlement Class Counsel's Attorneys' Fees and Expenses Award, and any taxes applicable to the Settlement Fund. *Id.* ¶¶ 10(hh), 14.

The Settlement Fund shall be deposited in an appropriate qualified settlement fund account established by the Settlement Administrator but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to the Agreement or returned to those who paid the Settlement Fund in the event that the Agreement is voided, terminated, or cancelled. *Id.* ¶ 14.

### 2. Settlement Benefits

All Settlement Class Members who submit a valid, complete, and timely Claim Form will receive a *pro rata* monetary payment from the Settlement Fund, after deduction of all Notice and

Settlement Administration Costs, and any Service Awards and Attorneys' Fees and Expenses Award approved by the Court. *Id.* ¶ 17.

Payments for Valid Claims shall be issued in the form of a Settlement Check and/or an electronic payment (e.g., Venmo, PayPal, Pre-Paid Electronic Credit Card, etc.) as soon as practicable after the Settlement Administrator receives full and final payment from Dental Intelligence. *Id.* ¶ 22.

### 3. Remedial Measures

In addition to the monetary compensation to Settlement Class Members listed above, Dental Intelligence has removed the Google tracking technology identified in the Complaint from the LocalMed Portal and thereafter decommissioned and took the LocalMed Portal offline. *Id.* ¶ 21. Settlement Class Counsel has verified this representation. *Id*.

## C. SETTLEMENT ADMINISTRATION

### 1. Settlement Administrator

The Parties have chosen Simpluris as the third-party Settlement Administrator. *Id.* ¶ 10(gg). The Settlement Administrator will administer the Settlement in accordance with the Agreement, including, but not limited to, overseeing administration of the Settlement Fund; providing Notice to Settlement Class Members as described in § VI of the Agreement; implementing the Notice Program; establishing and operating the Settlement Website and toll-free number; administering the Claims processes; and distributing payments according to this Agreement. *Id*. ¶ 27.

### 2. Notice Program

The Notice Program is straightforward and structured to satisfy due process. Notice of the Settlement shall be provided to Settlement Class Members pursuant to the methods set forth in the Agreement and/or as ordered by the Court, and shall comply with the laws of Illinois and the United States, the Constitution of the United States, and any other applicable law, including but not limited to, the Due Process Clause of the United States Constitution. *Id.* ¶¶ 33-34.

The Settlement Administrator shall establish a Settlement Website that will inform Settlement Class Members of the terms of the Settlement; their rights; dates, deadlines and related information, including periodic updates and a list of important dates, and will provide hyperlinked access to the Agreement, the Long-Form Notice and Short-Form Notice, any motion seeking Final Approval of the Agreement, any application for an award of Attorneys' Fees and Expenses and Service Awards, the Preliminary Approval Order, the Claim Form, the Complaint, and such other documents as Settlement Class Counsel and Dental Intelligence agree to post or that the Court orders posted on the Settlement Website. *Id.* ¶ 35. The Settlement Website shall also include a toll-free number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly, and which shall remain operational until at least thirty (30) days following the last day that any Settlement Checks issued remain valid and negotiable. *Id.* The Settlement Administrator shall also make available an Interactive Voice Response ("IVR") phone line with a script where Settlement Class Members can obtain information regarding the settlement and leave a message to receive a call back from the administrator during regular business hours. *Id.* ¶ 37.

Within ten (10) Days after entry of the Preliminary Approval Order, Dental Intelligence will provide the Settlement Administrator with the Class List, which includes e-mail addresses and phone numbers for Settlement Class Members. *Id.* ¶ 32. The Settlement Administrator shall attempt to send the Short-Form Notice[3] via e-mail to all Settlement Class Members for whom an e-mail address is available, and will re-attempt notice by text message if e-mail notice to a Settlement Class Member fails. *Id.* ¶ 32.[4] If notice by text message fails, the Settlement Administrator will attempt to locate mailing addresses for the telephone numbers to which text message notice failed and send the Short-Form Notice by U.S. Mail. *Id.*

---

[3] The proposed Short-Form Notice is attached as **Exhibit C** to the Agreement.
[4] The proposed Text Message Notice is attached as **Exhibit D** to the Agreement.

On or before the Notice Commencement Date, the Settlement Administrator shall publish the Long-Form Notice on the Settlement Website.[5] *Id.* ¶ 32(b). The Long-Form Notice shall contain a plain and concise description of the nature of the Action and the terms of the proposed Settlement, the date and location of the Final Approval Hearing, and the address of the Settlement Website at which Settlement Class Members may access the Agreement and other related documents; and shall describe the Claim Form and inform Settlement Class Members (i) of the *pro rata* payment that will be issued to any Settlement Class Member who submits a Valid Claim; and (ii) that in order to claim any payment pursuant to the Settlement, the Settlement Class Member must fully complete and timely submit the Claim Form prior to the Claim Deadline. *Id.* ¶ 36(a), (d)-(e). The Long-Form Notice shall also inform Settlement Class Members of their opt-out and objection rights and shall provide the deadlines and procedures for exercising these rights. *Id.* ¶¶ 36-37.

At least seven (7) Days prior to Settlement Class Representatives' deadline to file their motion seeking Final Approval of the Settlement, the Settlement Administrator shall provide Settlement Class Counsel and Defendant with one or more declarations confirming that the Notice Program was completed in accordance with the terms of the Agreement, the Parties' instructions, and the Court's approval. *Id.* ¶ 41.

### 3. Opt-Outs and Objections

Settlement Class Members may elect to exclude themselves from the Settlement by notifying the Settlement Administrator in writing of the intent to exclude himself or herself from the Settlement Class. *Id.* ¶ 39. Such written notification must be postmarked no later than the Opt-Out Deadline specified in the Notice, and must include the individual's name and address; a statement clearly manifesting the individual's intent to be excluded from the Settlement Class; and the individual's signature. *Id.* The Settlement Administrator shall provide the Parties with copies

[5] The proposed Long-Form Notice is attached as <u>**Exhibit B**</u> to the Agreement.

of all opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class. *Id.*

Settlement Class Members may object to the Settlement and/or to Settlement Class Counsel's application for an Attorneys' Fees and Expenses Award by submitting written objections to the Court, Settlement Class Counsel, and Defendant's Counsel no later than the Objection Deadline specified in the Notice. *Id.* ¶ 40.

### D. ATTORNEYS' FEES AND SERVICE AWARDS

The Agreement authorizes Settlement Class Counsel to seek an Attorneys' Fees and Expenses Award of not more than one-third of the Net Settlement Fund plus reasonable expenses and costs incurred to advance the Action. *Id.* ¶ 60. Settlement Class Counsel will make their application for an Attorneys' Fees and Expenses Award no later than fourteen (14) Days prior to the Objection Deadline. *Id.*

The Agreement also authorizes Settlement Class Counsel to seek a Service Award not to exceed five thousand dollars ($5,000.00) for each Settlement Class Representative, intended to compensate them for their time and effort on behalf of the Settlement Class. *Id.* ¶ 57. The application for the Service Award will be filed no later than fourteen (14) Days prior to the Objection Deadline. *Id.*

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed class action settlement. Specifically, Rule 23(e)(1)(B) directs a court to grant preliminary settlement approval and direct notice to the proposed class if the court "will likely be able to" grant final approval under Rule 23(e)(2) and "will likely be able to" certify a settlement class for purposes of entering judgment. FED.R.CIV.P. 23(e)(1)(B).

Under Rule 23(e)(2), a court may approve a class action settlement if it is "fair, reasonable, and adequate." FED.R.CIV.P. 23(e)(2). In determining whether a proposed class action settlement is "fair, reasonable, and adequate," courts consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3), and

(D) the proposal treats class members equitably relative to each other.

*Id*. A proposed class settlement is presumptively fair and adequate where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg & A. Conte, Newberg on Class Actions ("Newberg") § 11:41 (4th ed. 2002); *see also Goldsmith v. Tech. Sols. Co*., 1995 U.S. Dist. LEXIS 15093, at *10, fn. 2 (N.D. Ill. Oct. 10, 1995).

In assessing the fairness, reasonableness and adequacy of a settlement, courts "'do not focus on individual components of the settlements, but rather view them in their entirety'" and "consider the facts 'in the light most favorable to the settlement.'" *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (quoting *Armstrong v. Bd. of Sch. Dirs. Of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)). "'Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interest of the class and the public.'" *Gautreaux v. Pierce*, 690 F.2d 616, 638 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 315). "'Judges should not substitute their own judgments as to optimal settlement terms for the judgment of the litigants and their counsel.'" *Id.*

Here, the Court should grant preliminary approval because it "will likely be able to" grant final approval to the Settlement as "fair, reasonable, and adequate" and certify the Settlement Class for purposes of entering judgment after Notice and a Final Approval Hearing. FED.R.CIV.P. 23(e)(1)(B)-(2).

## IV. ARGUMENT

### A. CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

To determine whether it will likely be able to certify the Settlement Class for purposes of entering judgment on the Settlement, the Court looks to the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and the requirements of any subsection of Rule 23(b), here subsection (b)(3) (predominance and superiority). FED.R.CIV.P. 23(a)-(b). For the reasons set forth below, the Settlement Class satisfies all of the necessary requirements for certification.

#### 1. The Settlement Class Satisfies the Requirements of Rule 23(a).

##### *a. The Settlement Class Members are so numerous that joinder of all members is impactable.*

Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). "'Although there is no bright line test for numerosity, a class of forty is generally sufficient[.]'" *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008) (quoting *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 642 (N.D. Ill. 2002)); *see also Chandler v. S.W. Jeep–Eagle, Inc.*, 162 F.R.D. 302, 307-08 (N.D. Ill. 1995) (fifty class members satisfy numerosity requirement); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (151 class members sufficient to permit a class suit to proceed); *Woestman v. Signode Indus. Grp., LLC*, 594 F. Supp. 3d 993, 997 (N.D. Ill. 2022) (more than 100 proposed class members meet numerosity requirement). "Impracticable does not mean impossible, but rather, extremely difficult and inconvenient. When determining whether joinder is impracticable, the court considers not only the size of the class, but also its geographic dispersion, the relief

sought, and the ability of individuals to bring their own claims." *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, 2017 U.S. Dist. LEXIS 48792, at *134 (N.D. Ill. Mar. 31, 2017) (quotations and citations omitted).

Here, there are approximately 1,079,483 Settlement Class Members. Singh Prelim. App. Decl. ¶ 3. Joinder of 1,079,483 Settlement Class Members would be impractical, and far exceeds the accepted threshold of forty class members in this District. The number of individuals in the Settlement Class, coupled with the fact that it is a national class that is geographically disbursed throughout the country, further renders joinder impracticable. *See, e.g., Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 517 (N.D. Ill. 2008) (finding that joinder of hundreds of lawsuits is impractical). Accordingly, the Settlement Class satisfies the numerosity requirement.

***b. There are questions of law & fact common to the Settlement Class.***

Rule 23(a)(2) requires "questions of law or fact common to the class." FED.R.CIV.P. 23(a)(2). The commonality requirement is met when class members' claims "depend upon a common contention…that it is capable of classwide resolution[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[T]he commonality requirement has been characterized as a 'low hurdle' easily surmounted." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996) (citations omitted); *Woestman,* 594 at 997. Indeed, "even a single common question will do." *Dukes*, 564 U.S. at 359. "Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common." *Edmondson v. Simon*, 86 F.R.D. 375, 380 (N.D. Ill. 1980) (stating that where a defendant "has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected"). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("factual variations among class members' grievances do not defeat a class action").

Here, the Settlement Class Representatives assert claims arising out of the same conduct: the alleged disclosure by Dental Intelligence of information to Google via Tracking Tools embedded on the Portal. If this case were to proceed to discovery, Plaintiffs maintain adjudication of Plaintiffs' and Settlement Class Members' claims would require resolution of similar factual and legal issues, including, but not limited to: (1) whether Dental Intelligence disclosed Plaintiffs' and Settlement Class Members' Personal Dental Information to Google; (2) whether Dental Intelligence owed a legal duty to Plaintiffs and Settlement Class Members to exercise due care in collecting, storing, and safeguarding their Personal Dental Information; (3) whether Dental Intelligence breached a legal duty to Plaintiffs and Settlement Class Members by transmitting their Personal Dental Information to third parties; (4) whether Dental Intelligence adequately and accurately informed Plaintiffs and Settlement Class Members that the Personal Dental Information would be disclosed to third parties; and (5) whether Plaintiffs and Settlement Class Members are entitled to actual, consequential, and/or nominal damages and injunctive relief arising from the unauthorized disclosure of their Personal Dental Information. Compl. ¶ 140.

Of course, Defendant, if this case were continued to be litigated, would argue that there are various factors that undermine commonality and predominance. Defendant does not, however, contest that resolution of Settlement Class Members' claims may be fairly resolved—for settlement purposes—all at once.

Thus, these common questions, and others alleged in the Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis for settlement purposes.

***c. Class Representatives' claims are typical of the Class Members' claims.***

Rule 23(a)(3)'s 'typicality' requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." FED.R.CIV.P. 23(a)(3). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory." *Rosario*, 963 F.2d at 1018 (quoting *De La Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). The typicality

requirement "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). Rather than perfect uniformity, the Rule "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id*.

Here, the claims of Plaintiffs and the Settlement Class Members all stem from the same alleged course of conduct—the installation and use of the Tracking Tools on the Portal to collect Personal Dental Information provided by users of the LocalMed Portal while scheduling dental appointments, and its transmission to third parties. *See, e.g.*, S.A. ¶ 3. If this case were litigated, Defendant would contest typicality, but does not contest it is satisfied for settlement purposes.

**2. Settlement Class Counsel and the Settlement Class Representatives have and will continue to fairly and adequately protect the interests of the Settlement Class.**

Rule 23(a)(4) requires that a representative plaintiff be able to provide fair and adequate representation for the class. FED.R.CIV.P. 23(a)(4). It requires Plaintiffs to show both "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Courts in this District have broken the adequacy requirement down to three elements: (1) the representative cannot have interests antagonistic to the class; (2) the representative must have a sufficient interest in the outcome the litigation; and (3) counsel for the representative must have appropriate experience, qualifications, and competency. *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998) (citing *Gammon v. GC Servs. Ltd. P'ship.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995)). A class representative satisfies the adequacy requirement where they are "part of the class" and "'possess the same interest and suffer the same injury'" as the other class members. *Orr v. Shicker*, 953 F.3d 490, 499 (7th Cir. 2020) (quoting *Dukes*, 564 U.S. at 348).

***First***, Plaintiffs do not have any conflicts of interest with the absent Settlement Class Members, as their claims are coextensive with those of the Settlement Class. Singh Prelim. App. Decl. ¶ 46. Plaintiffs have the same interests as the proposed Settlement Class Members because they allege the same injuries caused in the same manner: the alleged disclosure of information about appointments they scheduled via the LocalMed Portal. Specifically, Plaintiffs allege that their information was collected and disclosed to third parties like Google without Plaintiffs' and Settlement Class Members' knowledge or consent, in the same manner and under the same circumstances using the same technology. S.A. ¶ 3. Under the terms of the Agreement, Plaintiffs and Settlement Class Members will all be eligible to receive *pro rata* cash payments from the Settlement Fund to remedy the alleged harms arising from the alleged use of the Tracking Tools. *See* S.A. ¶ 17.

***Second***, Plaintiffs have a sufficient and continuing interest in the outcome of this litigation. Plaintiffs have been actively engaged in this matter, providing pertinent information to counsel regarding their interactions with the Portal, as well as their anxiety stemming from the alleged use of Tracking Tools. Singh Prelim. App. Decl. ¶ 17. Plaintiffs stayed informed about the case, worked with counsel to prepare and review the complaints and other pleadings, and have communicated regularly with counsel throughout the case, up to and including evaluation and approval of the proposed Settlement Class. *Id.*

***Third***, proposed Settlement Class Counsel are well qualified and experienced in complex class action litigation, and have an established track record of litigating cases involving consumer protection and data privacy in particular. *Id.* ¶¶ 47-8, Composite Exhibit No. 2. Proposed Class Counsel have been appointed as class counsel in numerous complex class actions in courts throughout the country, including data breach and data privacy class action settlements. *Id.* Proposed Settlement Class Counsel identified and investigated the claims in this lawsuit and the underlying facts and successfully negotiated this Settlement on behalf of the Settlement Class. *Id.* ¶¶ 8-16. They have vigorously prosecuted this Action and will continue to do so through final approval. Thus, the requirements of Rule 23(a) are satisfied.

**3. The Settlement Class meets the requirements of Rule 23(b).**

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and…a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED.R.CIV.P. 23(b)(3). This inquiry is twofold.

***a. Common questions of law & fact predominate over any questions affecting only individual members of the Settlement Class.***

To satisfy 23(b)(3)'s requirement of predominance, Plaintiffs must show that "the central questions in the litigation are the same for all class members." *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014). Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Golon v. Ohio Sav. Bank*, 1999 U.S. Dist. LEXIS 16452, at *1 (N.D. Ill. Oct. 14, 1999). The presence of "some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.2d at 1017. Rather, it is "well-established" that "the presence of some individualized issues does not overshadow the common nucleus of operative fact presented when the defendant has engaged in standardized conduct toward the class." *Chandler v. Sw. Jeep-Eagle*, 162 F.R.D. 302, 308 (N.D. Ill. 1995).

Plaintiffs allege that Dental Intelligence engaged in a common course of conduct toward Settlement Class Members in that information provided through the LocalMed Portal was allegedly collected and transmitted to third parties, including Google, in the same way. Compl. ¶ 143. While Defendant would argue in the absence of settlement that common questions do not predominate, Plaintiffs maintain that common questions predominate for the reasons set forth in § IV(A)(i)(a), *supra*, and the parties to the settlement tailored the Settlement Class to include individuals who used the specific versions of the LocalMed Portal which included the Tracking Tools alleged by Plaintiffs, as explained above. Accordingly, for purposes of settlement, the predominance requirement is met. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-15 (N.D. Cal. 2018) (finding predominance satisfied in class settlement context because

"Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information").

***b. Class-wide restitution is superior to other methods for the fair & efficient adjudication of the controversy.***

Rule 23(b)(3) requires that the class action device be superior to other available methods for adjudicating the controversy. FED.R.CIV.P. 23(b)(3). As the Seventh Circuit recognizes, courts generally favor settlement of class actions:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong*, 616 F.2d at 312-13 (citations and quotations omitted); *Am. Int'l Grp., Inc. v. Ace Ina Holdings, Inc.*, 2012 U.S. Dist. LEXIS 25265, at *14 (N.D. Ill. Feb. 28, 2012) ("'Federal courts naturally favor the settlement of class action litigation.'") (*quoting Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996)).

A class action is superior to multiple individual actions where the "litigation costs are high, the likely recovery is limited" and individuals "are unlikely to prosecute individual claims" absent the cost-sharing efficiencies of a class action. *Maxwell v. Arrow Fin. Servs., LLC*, 2004 U.S. Dist. LEXIS 5462, at *17 (N.D. Ill. Mar. 31, 2004). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights….A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Cred. Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Consequently, "resolution…on a class wide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources." *Hinman*, 545 F. Supp. 2d at 807.

Here, Plaintiffs maintain there is little reason for Settlement Class Members to prosecute individual actions. While Plaintiffs allege that the economic harm arising from the alleged use of the Tracking Tools is significant, Plaintiffs believe the cost of individually litigating each claim would easily exceed the value of any relief that could be obtained by any one consumer. In fact, in this case many Class Members may be unaware of their claims or may not understand their legal rights. Many others may not have access to competent counsel willing to invest the time and resources necessary to prosecute these claims. *See Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974) (in determining the best available method for resolving a dispute, the Court may consider "the inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."). A class action is therefore the superior method of adjudicating this matter and will "achieve economies of time, effort, and expense, and promote…uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997).

In sum, the proposed Settlement Class's claims satisfy Rule 23(b)(3)'s requirements for settlement purposes and should be certified.

**B. THE SETTLEMENT MEETS THE REQUIREMENTS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)(2).**

The Court's task at the preliminary approval stage is to "determine whether the proposed settlement is within the range of possible approval." *Armstrong*, 616 F.2d at 314 (quotations omitted); *see also* Newberg, *supra*, § 11.25 (noting "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness…and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to settlement class members) (citations omitted).

To evaluate the fairness of a class action settlement, a court must consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the presence of collusion

in reaching a settlement; and (4) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)); *see also Armstrong*, 616 F.2d at 314; *Isby*, 75 F.3d at 1199. Of these considerations, the first is most important. *Synfuel Techs*., 463 F.3d at 653.

Here, the proposed Settlement is fair, reasonable, and adequate considering the relevant factors and falls within the range of possible approval.

**1. The Class Representatives & Settlement Class Counsel have adequately represented the Settlement Class.**

"The adequacy of class counsel turns on counsel's qualifications, experience, and ability to conduct the litigation." *T.K. v. Bytedance Tech. Co., Ltd.*, 2022 U.S. Dist. LEXIS 65322, at *11 (N.D. Ill. Mar. 25, 2022). Courts routinely find that class counsel is adequate where they are experienced in the subject matter of the litigation and have diligently pursued a favorable resolution. *See id.* ("Plaintiffs present unrefuted evidence of their counsel's expertise in litigating consumer class actions, many of which involve privacy rights"); *Rysewyk v. Sears Holdings Corp.*, 2019 U.S. Dist. LEXIS 236004, at *13 (N.D. Ill. Jan. 29, 2019) ("Class Counsel have extensive experience in prosecuting consumer class action claims and have litigated this case intensively and successfully"); *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 344 (N.D. Ill. 2010) (stating that "class counsel have invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement[, and] have experience pursuing consumer-class-action cases").

Settlement Class Counsel have extensive experience in class action litigation in general and in cases involving data privacy in particular. *See* Singh Prelim. App. Decl. ¶¶ 47-8, Composite Exhibit No. 3. Their expertise allowed them to, among other things, investigate and evaluate the risks and merits of Plaintiffs' claims and build a strong case in an evolving area of law including, but not limited to, the application of legal theories to complex technological matters involving the alleged use of tracking and source code to collect and disclose information to third parties. *Id.* ¶¶ 8-16. Settlement Class Counsel conducted a thorough pre-suit investigation of their clients' claims

as measured against a rapidly developing area of the law, and engaged in contentious motion practice. *See id*. Moreover, given their experience in website tracking matters, Settlement Class Counsel was able to request specific informal discovery from Dental Intelligence to aid in the settlement negotiations, allowing both Parties to evaluate the strengths and weaknesses of the case in a timely and efficient manner. *Id*.

As with Settlement Class Counsel, the Class Representatives have adequately represented the Settlement Class. Plaintiffs were engaged by counsel to assist in pre-suit investigation, they provided documents and information relevant to their claims, and reviewed and approved the allegations of various pleadings as well as the terms of the Settlement. *See id*. ¶¶ 17, 27.

Accordingly, the Class Representatives and Settlement Class Counsel have adequately represented the Settlement Class as required under Rule 23(e)(2)(A) and this factor weighs strongly in favor of preliminary approval.

**2. The Settlement resulted from extensive arms-length negotiations and is not the product of collusion.**

The requirement that a settlement be fair is designed to protect against collusion among the parties. *See Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approving settlement upon a finding of no "hanky-panky" in negotiations). Notably, "[a] settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate." *Gillespie v. Equifax Info. Servs., LLC*, 2009 U.S. Dist. LEXIS 131242, at *10 (N.D. Ill. Dec. 18, 2009) (finding settlement negotiations undertaken by experienced class counsel with assistance of third-party mediator was product of arms-length negotiation). Further, "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." FED.R.CIV.P. 23(e)(2)(A) & (B) (advisory committee's note to 2018 amendments).

The Settlement satisfies Rule 23(e)(2)(B) because it is the product of hard-fought, arm's-length negotiations overseen by an experienced data privacy and class action mediator, Marc E.

Isserles, during which Dental Intelligence vigorously disputed the allegations in the Complaint. *See* FED.R.CIV.P. 23(e)(2)(B); Singh Prelim. App. Decl. ¶¶ 8-16. After thoroughly investigating the facts and rapidly evolving law, requesting and reviewing informal discovery, and preparing for and participating in mediation, Settlement Class Counsel were in a position to fully assess the potential risks and rewards of litigation and reached the conclusion that Settlement is an excellent result for the Settlement Class. *See id.* ¶¶ 25-41. In short, this Settlement was negotiated at arm's length and was procedurally fair, adequate and reasonable. *See* FED.R.CIV.P. 23(e)(2)(B).

**3. The Settlement provides significant benefits to the Settlement Class, particularly in light of the uncertainty of prevailing in the litigation.**

Rule 23(e)(2)(c) requires examination of the relief provided by the Settlement. FED.R.CIV.P. 23(e)(2)(c). The Settlement reached here provides Settlement Class Members with compensation for alleged harms set forth in the complaint.

Settlement Class Members who submit a valid, complete, and timely Claim Form will receive a *pro rata* monetary payment from the Settlement Fund, after deducting Notice and Settlement Administration Costs, and any Service Awards and Attorneys' Fees and Expenses Award approved by the Court. S.A. ¶ 17. Additionally, all Settlement Class Members will benefit from the business-practice change described in the Agreement: Dental Intelligence has removed any Google technology embedded by Dental Intelligence in the LocalMed Portal, and Settlement Class Counsel has verified this representation. *Id.* ¶ 21.

The Settlement benefits here are comparable to results reached in other data privacy cases concerning the compromise and unauthorized disclosure of protected health information. *See, e.g., John v. Froedtert Health, Inc.*, Case No. 2023CV001935 (Circuit Court of the State of Wisconsin, County of Milwaukee) (final approval granted September 29, 2023 for non-reversionary common fund settlement of $2 million for a class of approximately 459,000 patients); *In re Novant Health, Inc.*, 2024 U.S. Dist. LEXIS 107949 (M.D.N.C.) (final approval granted June 6, 2024 for non-reversionary common fund settlement of $6.66 million for a class of approximately 1,362,165 class members); *In re Advocate Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736 (E.D. Wis.) (final

approval granted July 10, 2024 for non-reversionary common fund settlement of $12,225,000 for a class of approximately 2.5 million class members); *B.K. v. Eisenhower Med. Ctr.*, 2025 U.S. Dist. LEXIS 209288, at *17-18 (C.D. Cal. Oct. 20, 2025) (final approval granted October 22, 2025 for non-reversionary common fund settlement where the *pro rata* monetary relief per settlement class member was $4.59 each); *Weddle v. Wakemed Health*, No. 22CVS013860-910 (Wake Cnty. Sup. Ct., North Carolina) (final approval granted November 17, 2025 for non-reversionary common fund settlement of $2,450,000 for a class of approximately 500,000 patients).

***a. The costs, risks and delay of trial & appeal are considerable.***

"[T]he Seventh Circuit [has] instructed that the likely complexity, length, and expense of continued litigation are relevant factors district court[s] should consider in determining whether a class action settlement satisfies Rule 23." *Amadeck v. Capital One Fin. Corp.* (*In re Capital One Tel. Cons. Prot. Act Litig.*), 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015) (citing *Synfuel Techs.*, 463 F.3d at 653.

Here, the value achieved through the Settlement is guaranteed, significant, and immediate, while the expense, duration and complexity of protracted litigation would be substantial and the outcome uncertain. *See* Singh Prelim. App. Decl. ¶¶ 28-41. Proceeding with continued litigation would present risks inherent in class certification and proof of liability—both factors considered under this Circuit's test for final approval.

Data privacy litigation is an evolving field, and Settlement Class Members have no guarantee of attaining a favorable result. *See In re Novant Health, Inc.*, 2024 U.S. Dist. LEXIS 107949, at *19-20 (M.D.N.C. June 17, 2024) ("The law surrounding data privacy and the surreptitious sharing of user data is still developing, making it challenging for the parties to evaluate the likelihood of prevailing at trial."); *see also In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (stating "[d]ata privacy law is a relatively undeveloped and technically complex body of law"); *Katz-Lacabe v. Oracle Am., Inc.*, 2024 U.S. Dist. LEXIS 208150, at *10 (N.D. Cal. Nov. 15, 2024) ("The novelty and scope of Plaintiffs' privacy allegations

made this a particularly risky case to litigate.”). While Plaintiffs strongly believe in the merits of their case, Dental Intelligence has denied, and continues to deny, all liability alleged in this matter, maintaining that it has meritorious defenses to the claims alleged. *See* S.A. ¶ 6. Indeed, should litigation continue, Plaintiffs would have to immediately survive an anticipated motion to dismiss their Complaint merely to proceed out of the pleading stage and into discovery, without any promise of resolution in their favor. While Plaintiffs’ invasion of privacy, negligence, and ECPA claims have survived one motion to dismiss, similar data privacy cases have faced substantial hurdles in making it past the pleading stage. *See, e.g.*, *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. March 3, 2023); *Hartley v. Univ. of Chi. Med. Ctr*., No. 22 C 5891, 2023 U.S. Dist. LEXIS 200619 (N.D. Ill. Nov. 8, 2023). Even after surviving a Rule 12 motion, obtaining class certification and an eventual jury verdict is far from certain. *See, e.g.*, *Frasco v. Flo Health, Inc.*, 2024 U.S. Dist. LEXIS 171360, at *1 (N.D. Cal. Sept. 23, 2024) (granting summary judgment in part in pixel tracking case); *Hammon v. The Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at Rule 56 stage); *In re TD Ameritrade Acct. Holder Litig.*, 2011 U.S. Dist. LEXIS 103222, at *10 (N.D. Cal. Sept. 13, 2011); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (denying certification of data breach class). Furthermore, absent an early resolution, the parties would likely be litigating this Action for years to come. In contrast, this settlement makes significant relief *immediately* available to Settlement Class Members. *See Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 197 (N.D. Ill. 2018) (noting that the existence of “substantial motion practice on class certification and a possible summary judgment motion, plus trial and appeal” supports a finding that “continued litigation is likely to be lengthy, complex, and expensive.”).

Through the Settlement, Settlement Class Members gain significant benefits in the near term without having to face further risk of not receiving any relief at all. *See Braun v. Phila. Inquirer, LLC*, 2025 U.S. Dist. LEXIS 85786, at *27 (E.D. Pa. May 6, 2025) (“By its very nature, continued litigation involves inherent risk of Plaintiff receiving an adverse result — especially

considering the cutting-edge areas of data privacy law involved in this litigation."). Thus, Settlement Class Counsel, who have considerable experience litigating these types of claims, believe that the Settlement represents a fair "compromise [that] is preferable to the risk and uncertainty of trial." *Pesek v. Donahue*, 2006 U.S. Dist. LEXIS 26209, at *13 (N.D. Ill. Feb. 9, 2006).

***b. The proposed method of distributing relief and processing Claims is objective, efficient & fair.***

Under the terms of the Settlement, the Settlement Administrator is responsible for evaluating Claims and distributing Settlement payments. S.A. ¶¶ 19, 27. All Settlement Class Members may submit a Claim until the Claim Deadline, which is ninety (90) Days after the Notice Commencement Date. *Id.* ¶ 10(e). The Claim Form is simple and easy to complete, requiring Settlement Class Members to provide only their contact information and confirmation that they elect to receive the *pro rata* cash payment approved by the Court. *See id.*, Ex. A. Claim Forms may be submitted electronically via the Settlement Website or physically, by mail to the Settlement Administrator. *Id.* ¶ 18. Class Members will also be able to contact the Settlement Administrator with any questions through a toll-free number, e-mail address, and mailing address made available on the Settlement Website. *Id.* ¶ 35. Additionally, the Settlement Administrator shall make available an IVR phone line with a script where Settlement Class Members can obtain information regarding the settlement and leave a message to receive a call back from the Settlement Administrator during regular business hours. *Id.* ¶ 37. The Settlement Administrator is charged with reviewing and evaluating each Claim Form, assessing the validity of any required documentation and ensuring Claims are submitted timely and completely. *Id.* ¶¶ 19, 27-28. This procedure is objective, effective and fair.

***c. The Attorneys' Fees and Expenses Award as well as the Service Awards that Plaintiffs will request are reasonable and appropriate.***

Federal Rule of Civil Procedure 23(e)(2)(C)(iii) requires evaluation of the terms of any proposed attorneys' fees including the timing of any payment. FED.R.CIV.P. 23(e)(2)(C)(iii). Under the Settlement, Settlement Class Counsel may request an Attorneys' Fees and Expenses Award of

up to one-third of the Net Settlement Fund plus reasonable expenses and costs incurred to advance the Action. *Id.* ¶ 52. Additionally, Settlement Class Counsel will ask the Court to approve Service Awards of up to five thousand dollars ($5,000.00) for each Settlement Class Representative, intended to compensate them for their efforts in the litigation and commitment on behalf of the Settlement Class. *Id.* ¶ 50. The Settlement provides that Attorneys' Fees and Expenses Awards and Service Awards will be paid from the Settlement Fund only after a separate motion is filed, at least fourteen (14) days before the Objection Deadline, seeking Court approval for the same. S.A. ¶¶ 47, 57, 60. Doing so will allow Settlement Class Members adequate time to evaluate these requests as they consider whether to opt out of or object to the Settlement. *Id.* ¶¶ 39-40. The Settlement Website and Long-Form Notice will also clearly inform Settlement Class Members of the maximum amounts to be sought by Settlement Class Counsel as an Attorneys' Fees and Expenses Award and the individual Service Awards to Plaintiffs. *Id.* ¶ 35, 36(d).

A percentage-of-the-fund method for evaluating the requested fee award is appropriate here. "Courts award attorneys' fees as a percentage of the total fund made available to the Class when counsel's efforts result in the creation of a common fund, and therefore, is entitled to a reasonable attorney's fee from the fund as a whole." *Bartlett v. City of Chi.*, 2017 U.S. Dist. LEXIS 239350, at *11-12 (N.D. Ill. Jan. 31, 2017). Unlike the lodestar method, "'[t]he percentage method is easy to calculate, does not involve the court in fee audits, and does not create incentives to waste time.'" *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 199 (N.D. Ill. 2018) (quoting Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements*, 1 J. Empirical Legal Studies 27, 31-32 (Mar. 2004)). Accordingly, the percentage method will be the better method for determining appropriate attorneys' fees in this Action. *See T.K. v. Bytedance Tech. Co., Ltd.*, 2022 U.S. Dist. LEXIS 65322, at *66 (N.D. Ill. Mar. 25, 2022) (determining attorneys' fees using the percentage method and noting that the "percentage method is employed by the vast majority of courts in the Seventh Circuit.").

Moreover, the percentage that Settlement Class Counsel may request—up to one-third of the Net Settlement Fund, which is defined under the Agreement as the Settlement Fund after

deducting all Notice and Settlement Administration Costs, litigation expenses, and any Service Awards approved and awarded by the Court—is reasonable. S.A. ¶¶ 10(t), 60. In evaluating the reasonableness of a request for attorney's fees, Seventh Circuit courts reference the "*net* value of a settlement as a reference for awarding fees, not counting administrative costs and incentive awards." *Leung v. XPO Logistics, Inc.,* 326 F.R.D. 185, 200 (N.D. Ill. 2018). "Courts routinely hold that one-third of a common fund is an appropriate attorneys' fee award in class action settlements[.]" *Wolfe v. TCC Wireless, LLC*, 2018 U.S. Dist. LEXIS 40596, at *9 (N.D. Ill. Mar. 12, 2018) (collecting cases); *see also id.* (granting attorney's fees equal to one-third of net settlement). Accordingly, the percentage of the Settlement Fund contemplated to be requested as the Attorneys' Fees and Expenses Award, as well as the methodology by which it is calculated, aligns with standard practice in the Seventh Circuit.

The proposed Service Awards of $5,000 to each Class Representative are also well within the range of awards granted to named plaintiffs in class proceedings. "Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. 'Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.'" *Furman v. At Home Stores LLC*, 2017 U.S. Dist. LEXIS 73816, at *5 (N.D. Ill. May 1, 2017) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) and approving service awards of $5,000 and $10,000 to named plaintiffs); *see also Chambers v. Together Credit Union*, 2021 WL 1948452, at *3 (S.D. Ill. May 14, 2021) ("In the Seventh Circuit…class representative service awards of $10,000 to $25,000 or more are not uncommon."); *In re Tiktok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 949 (N.D. Ill. 2022) (approving service awards of $2,500 for each of the thirty-five named plaintiffs in a privacy class action and observing that "[a] study of approximately 1,200 class actions showed that the median incentive award per plaintiff was $5,250"); *Roberts v. Graphic Packaging Int'l, LLC*, 2024 U.S. Dist. LEXIS 122323, at *19 (S.D. Ill. July 11, 2024) (finding a service award of $10,000 reasonable in a privacy class action and collecting cases awarding similar or greater amounts); *Johnson v. Nice Pak Prods.*, 2026

U.S. Dist. LEXIS 145670, at *15 (S.D. Ind. July 1, 2026) (approving service awards of $5,000 for named plaintiffs who "adequately protected the interests of the class and helped obtain a favorable settlement" in a data breach class action).

Simply put, Settlement Class Counsel's requests for the Attorneys' Fees and Expenses Award as well as for modest Service Awards are well supported by law and are additional bases for preliminarily approving the Settlement. *See* FED.R.CIV.P. 23(e)(2)(C)(iii).

***d. Disclosure of side agreements.***

There are no additional agreements that require identification or examination under Rule 23(e)(3). *See* Singh Prelim. App. Decl. ¶ 25.

**4. The Settlement treats Settlement Class Members equally.**

The Court must also consider whether the Settlement treats Settlement Class Members equitably relative to one another. *See* FED.R.CIV.P. 23(e)(2)(D). Here, the Settlement treats all Settlement Class Members fairly and equally. All Settlement Class who submit a Valid Claim will receive a *pro rata* share of the Settlement Fund, after deducting all Notice and Settlement Administration Costs, and any Service Awards and Attorneys' Fees and Expenses Award approved by the Court. S.A. ¶ 17.

This Rule 23(e) factor is thus satisfied, and because the Settlement satisfies all of Rule 23(e)'s requirements, preliminary approval should be granted.

**C. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM.**

For classes, like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED.R.CIV.P. 23(c)(2)(B) (permitting notice to be sent by "U.S. Mail, electronic mail, or other appropriate means"). With regard to contents, a notice is the best practicable under the circumstances where it "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Program negotiated and agreed to under the Settlement is the best practicable under the specific circumstances of this case. *See* Singh Prelim. App. Decl. ¶¶ 49-52. Notice will be delivered via e-mail to all Settlement Class Members for whom an e-mail address is available on the Class List. *Id.* at ¶ 32(a). With regard to any Short-Form Notices sent by e-mail that are returned undeliverable, the Settlement Administrator shall use reasonable efforts to correct any issues that may have caused an e-mail "bounce-back" to occur and make a second attempt to re-send the notice via e-mail. *Id.* In the event that sending the Short-Form Notice via e-mail still fails, the Settlement Administrator will attempt to send the Short-Form Notice via text message to the telephone number associated with the e-mail address for which notice via e-mail failed. *Id.* If sending the Short-Form Notice via text message fails, the Settlement Administrator will run those telephone numbers through a reverse telephone search to locate associated names and mailing addresses and then use that information to send the Short-Form Notice via U.S. Mail to the extent an address is identified. *Id.* The Notice will include the Internet URL address of the Settlement Website established by the Settlement Administrator, where Settlement Class Members can review comprehensive Settlement-related information and documents. *Id.* ¶¶ 31(c), 34.

The Parties negotiated the form of Notice with Simpluris' aid. Singh Prelim. App. Decl. ¶ 49. The proposed Long-Form Notice contains all reasonably necessary information to apprise Settlement Class Members of the terms of the Settlement and their rights, including:

> *General Terms*: The Long-Form Notice shall contain a plain and concise description of the nature of the Action and the proposed Settlement, including information on the definition of the Settlement Class; the identity of Settlement Class Members; how the proposed Settlement would provide relief to Settlement Class Members; the date and location of the Final Approval Hearing; the address of the Settlement Website at which Settlement Class Members may access this Agreement and other related documents and information; what claims are released under the proposed Settlement; and other relevant information.

> *Opt-Out Rights*: The Long-Form Notice shall inform Settlement Class Members that they have the right to opt-out of the Settlement. The Long-Form Notice shall provide the deadlines and procedures for exercising this right.
>
> *Objection to Settlement*: The Long-Form Notice shall inform Settlement Class Members of their right to object to the proposed Settlement and appear at the Final Approval Hearing. The Long-Form Notice shall provide the deadlines and procedures for exercising these rights.
>
> *Fees and Expenses*: The Long-Form Notice shall inform Settlement Class Members of the maximum amounts to be sought by Settlement Class Counsel as an Attorneys' Fees and Expenses Award and the individual Service Awards to Plaintiffs.
>
> *Claim Form*: The Long-Form Notice shall describe the Claim Form and shall inform the Settlement Class Members (i) of the *pro rata* payment that will be issued to any Settlement Class Member who submits a Valid Claim; and (ii) that in order to claim any payment pursuant to the Settlement, the Settlement Class Member must fully complete and timely submit the Claim Form prior to the Claim Deadline.

*See* S.A. ¶ 36, Ex. B. The proposed Short-Form Notice is also clear, concise and informs Settlement Class Members of the general terms of the Settlement, the proposed allocation of Attorneys' Fees and Expenses and Service Awards and provides information regarding the date, time and place of the Final Approval Hearing. *See id.*, Ex. C.

As such, the Notice Program should be approved.

**D. THE COURT SHOULD APPOINT THE SETTLEMENT ADMINISTRATOR.**

In connection with the Notice Program and Settlement Administration, Plaintiffs request that the Court appoint Simpluris to serve as the Settlement Administrator. Simpluris has a trusted and proven track record of supporting class action administration and extensive legal administration experience. Singh Prelim. App. Decl. ¶ 49.

**E. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.**

The last step in the Settlement approval process is a Final Approval Hearing during which the Court will make its final evaluation of the Settlement based on, among other things, Settlement Class Members' responses to the Notice, which Settlement Class Counsel expect to be overwhelmingly positive. *See* Singh Prelim. App. Decl. ¶ 52. Plaintiffs and proposed Settlement

Class Counsel request that the Court schedule the Final Approval Hearing no earlier than 90 days from the Notice Commencement Date.[6]

## V. PROPOSED SCHEDULE

Plaintiffs propose the following schedule leading to the final approval hearing:

| Event | Date |
|---|---|
| **Notice Commencement Date** | 30 Days after Preliminary Approval Order |
| **Settlement Class Counsel's Motion for Attorneys' Fees and Expenses and Settlement Class Representatives' Service Awards** | 14 Days Before Objection and Opt-Out Deadlines |
| **Opt-Out and Objection Deadlines** | 60 Days after Notice Commencement Date |
| **Claims Deadline** | 90 Days after Notice Commencement Date |
| **Final Approval Hearing** | At least 90 Days from the Notice Commencement Date. |

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant their unopposed Motion for Preliminary Approval and enter an order in or substantially similar to the form attached as **Exhibit D** to the Agreement: (1) Preliminarily approving the proposed Settlement; (2) appointing Class Representatives and Settlement Class Counsel; (3) approving the Short Form Notices, Long Form Notice, and Claim Form; (4) appointing the Settlement Administrator; (5) approving the proposed administrative deadlines and procedures, including the proposed Final Approval Hearing date and procedures regarding objections, opt-outs and submitting Claim Forms; and (6) providing Notice of the proposed Settlement to the Settlement Class.

[6] The Proposed Preliminary Approval Order, attached as **Exhibit D** to the Agreement, will also be provided to the Court as an editable Word document so that the Court may place the date of the Final Approval Hearing and any other events that the Court may schedule.

Dated: September 23, 2026

Respectfully submitted,

*/s/ Sonjay C. Singh*
Sonjay C. Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: ssingh@sirillp.com

Tyler J. Bean (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
101 Park Avenue
Suite 1300, #16982799
Oklahoma City, OK 73102
Tel: (212) 532-1091
E: tbean@sirillp.com

Mason A. Barney
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com

***Attorneys for Plaintiffs and the Settlement Class***